# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELA L. HEATH,

*Plaintiff,*

v.                                                          Case No.  11-1138-EFM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Angela Heath seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits (OASDI) under Title II of the Social Security Act,[1] and supplemental security income benefits (SSI) under Title XVI of the Social Security Act.[2]  Plaintiff alleges that her claim must be remanded for rehearing because the ALJ failed to make certain findings when assessing a treating-source physician's opinion and because the ALJ adopted the findings and prior testimony of a vocational expert when assessing Plaintiff's residual functional capacity.  Because the Court

---

[1]    *See* 42 U.S.C. §§ 401 et seq. (including provisions for old age, survivors, and disability insurance, commonly referred to as "OASDI").

[2]    *See id.* §§ 1381 et seq.

finds that the Commissioner's decision was supported by substantial evidence and substantially comported with proper legal procedure, the Court affirms.

## I.       Factual and Procedural Background

Heath's work history includes several positions as a laborer in fast-food chains, industrial companies, and cleaning services.[3]  She holds a GED and completed approximately two years of college classes, but did not receive a post-secondary degree.  Heath filed an application for OASDI benefits on July 1, 2005, and an application for SSI on July 7, 2005.  In both applications, Heath alleged that she became physically disabled on February 1, 2004, due to depression and chronic pain.  Heath submitted records to the ALJ describing an automobile accident that occurred in 1995.  According to that report, Heath suffered partial permanent impairment to her left knee and lumbar plexus disorder with lower extremity radiculitis.  At the time of the accident, Heath's doctor predicted that Heath's knee and lower back would degenerate at a faster-than-normal rate of aging, and that Heath would suffer some pain in those areas for the rest of her life.

Heath's application for disability benefits was initially denied on March 9, 2006, and again denied after reconsideration on August 10, 2006.  Heath requested a hearing and appeared before an administrative law judge (ALJ) on September 22, 2008.  The ALJ denied Heath's request for benefits on January 26, 2009.  The Social Security Administration's Appeals Council denied Heath's request for review of the ALJ's decision on March 18, 2011.  Because Heath has exhausted all administrative remedies available to her, the Commissioner's decision denying

---

[3]     Work History Report, Doc. 9, p. 120.

Heath's application for benefits is now final and this Court has jurisdiction to review the decision.[4]

## II.    Legal Standard

This Court reviews the decisions of lower tribunals to determine "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[5]  To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and a present inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6]  The Commissioner follows a five-step inquiry when deciding whether a claimant is disabled and entitled to social security benefits.[6]  The claimant bears the burden of establishing a prima facie case of disability during the first four steps of the agency's inquiry.[7]  The first four steps proceed in the following manner:

> Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity.  At step two, the claimant must show that he has a medically severe impairment or combination of impairments.  At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits.  If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work.[8]

---

[4]    *See* 45 U.S.C. § 405(g) (granting jurisdiction to the federal courts to review "any final decision of the Commissioner of Social Security"); 20 C.F.R. §§ 404.900(a), 416.1400 (outlining the process by which the Commissioner's decisions regarding OASDI and SSI claims become final).

[5]    *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

[6]    42 U.S.C. §§ 423(d)(1)(A) (OASDI), 1382c(a)(3)(A) (SSI).

[6]    *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

[7]    *Id.*

[8]    *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), *accord Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

If the claimant can meet her burden of proof with respect to the first four steps, the fifth step requires the Commissioner to show that, despite her disability and impairment, the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, taking into account her age, education, and work experience.[9]

### III.    Analysis

In this appeal, Heath argues that the ALJ's decision is erroneous because the ALJ did not apply the correct legal standards when weighing certain evidence during steps four and five. Heath presents no arguments—other than boilerplate language in the legal standards section of her brief—that the ALJ's decision is not supported by substantial evidence.  And Heath does not contest the ALJ's conclusions that current medical records do not support Heath's claims of a physical disability.  Instead, Heath's arguments in support of remand rest on alleged procedural deficiencies in the ALJ's analysis of Heath's mental state.   Specifically, Heath alleges that (1) the ALJ did not explicitly state the weight the ALJ afforded to the opinion of one of Heath's treating psychologists, Dr. Mark Goodman; and (2) the ALJ did not properly compare Heath's current ability to work with the physical and mental demands of her past relevant work because the ALJ made no independent findings of those demands.  The Court will address each argument in turn.

### A.    The ALJ properly weighed Dr. Goodman's treating source opinion.

Federal regulations list the impairments recognized by the Social Security Act.[10]  Heath does not dispute the ALJ's conclusion that her previous musculoskeletal impairments do not

---

[9]   *See Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F. 3d at 1084).

[10]   *See* 20 C.F.R. Pt. 404, Subp. P, App. 1.

present an extreme limitation in her ability to work.[11]   But Heath argues that she suffers from a debilitating affective mental impairment.   To find that Heath suffers from an affective disorder that rises to the level of an impairment, Heath had to show that she suffered symptoms of depression that resulted in at least two of the following: (1) marked restrictions of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated, extended episodes of decompensation.[12]   A "marked" limitation is one that is more than moderate, but less than extreme.[13]

When reviewing the medical opinion of a treating physician, an ALJ must engage in a two-step inquiry.   First, the ALJ must decide whether to afford the opinion controlling weight. Second, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."[14]   The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[15]

---

[11]   *See* ALJ Decision, Doc. 9, p. 19.

[12]   20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.04.

[13]   *Id.* § 12.00(C).

[14]   *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (internal citation omitted).

[15]   *Id.* at 1331.

The Tenth Circuit has said that failure to specifically address these factors and the weight afforded to the treating source's medical opinion warrants a remand.[16]

In this case, the ALJ found that Heath suffered depression that resulted in mild restrictions in her activities of daily living and social functioning, moderate difficulties with concentration, and no extended episodes of decompensation.[17]  As support for this conclusion, the ALJ cited findings from five treating-source mental-health professionals.  Of those five professionals, only one doctor, Dr. Mark Goodman, found that Heath suffered from marked limitations in functioning due to major depressive and bipolar disorders.  Heath alleges that the Court must remand her case because the ALJ failed to explicitly address the above-cited factors regarding Dr. Goodman's treatment of Heath and the weight the ALJ afforded to Dr. Goodman's report.  The Court disagrees.

Heath correctly cites the Tenth Circuit's decision in *Krauser* as a requirement that ALJs expressly address the treating-source factors and weight afforded to such opinions.  But more recently, the Tenth Circuit has upheld ALJ decisions that did not specifically address the factors applicable to treating source opinions but merely "touch[ed] on several of them."[18]  And remand was not required in a case where "the ALJ did not state a specific weight he attached to [the

---

[16]    *Id.*

[17]    ALJ Decision, Doc. 9, p. 19.

[18]    *Luttrell v. Astrue*, 453 Fed. App'x 789, 794 (10th Cir. 2011); *see also Payton v. Astrue*, No. 11-6199, slip op. at *4 (10th Cir. May 7, 2012) ("From [the ALJ's] decision, we conclude that she gave no weight to [the doctor's] opinion.  Although an explicit statement to that effect would be preferable, she did state that she had considered the medical evidence in accordance with the regulations and applicable Social Security Ruling that discuss the weight to give a treating doctor's opinion."); *Nelson v. Comm'r of Social Security*, 195 Fed. App'x 462, 472 (6th Cir. 2006) ("The ALJ implicitly provided sufficient reasons for not giving those [treating-source] opinions controlling weight, and indeed for giving them little or no weight overall."); *Fisher v. Astrue*, No. 09-4116-RDR, slip op. at 7 (D. Kan. Feb. 7, 2012) ("The ALJ did not ignore [the doctor]'s findings; rather his written decision addressed many of the relevant factors for evaluating the opinion of a treating physician.").

treating source's] opinion" because it was "readily apparent" that the ALJ "afforded the opinion little weight."[19]

The Court finds the present case more analogous to those cases that followed the Tenth Circuit's decision in *Krauser*.   Although the ALJ did not expressly identify the factors enumerated in *Krauser* in his decision, he did address each factor.   First, the ALJ addressed the nature and length of Dr. Goodman's relationship with Heath when the ALJ stated that Dr. Goodman evaluated Heath in on several occasions in the spring and summer of 2008, and that Heath had "recently started seeing Dr. Goodman for her depression."[20]   Second, the ALJ explained that "Dr. Goodman completed a mental assessment dated August 29, 2008 noting marked limitations in the ability to complete a normal workday and workweek,"[21] and that Dr. Goodman was currently treating Heath for depression because "[h]e thinks she needs to deal with all her issues before she goes back to work."[22]   Third, the ALJ was careful to explain that Dr. Goodman's conclusions that Heath suffered marked limitations are not supported by the record because his conclusions "are not reflected in the treatment notes," which actually state that Heath had a favorable prognosis so long as she continued with treatment.[23]   Fourth, the ALJ compared Dr. Goodman's conclusions to the record and the conclusions of four other treating physicians and noted that none of the other doctors found that Heath suffered marked limitations in functioning.   Moreover, the ALJ noted that other evaluations of Heath reflected malingering and

---

[19]   *Kruse v. Astrue*, 436 Fed. App'x 879, 883 (10th Cir. 2011).

[20]   ALJ Decision, Doc. 9, p. 20–21.

[21]   *Id.* at 20.

[22]   *Id.* at 21.

[23]   *Id.*

over-endorsement of symptoms, and that Dr. Goodman's own administration of the Minnesota Multiphasic Personality Inventory yielded an invalid result. Furthermore, "where, as here, the ALJ's decision states that he considered all of the evidence, 'our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.' "[24]   Consequently, the ALJ's findings regarding Dr. Goodman's treating-source opinion are sufficient to show that the ALJ considered the proper factors when weighing the opinion.

Finally, it is clear from the ALJ's opinion that he afforded little weight to Dr. Goodman's conclusions that Heath suffered marked limitations as a result of her mental disability. Dr. Goodman was the only doctor who found that Heath suffered marked limitations, and the ALJ's findings to the contrary evidence his declination to follow Dr. Goodman's opinion. And, as outlined in the preceding paragraph, the ALJ was justified in discounting the conclusions in Dr. Goodman's report that were not supported by the record. The fact that the ALJ failed to specifically designate the weight he afforded to Dr. Goodman's opinion is harmless error. Because the ALJ's findings and decision substantially comported with the required procedures, the Court rejects Heath's claim that remand is necessary to correct minor deficiencies in the decision.[25]

---

[24]   *Qualls v. Astrue*, 428 Fed. App'x 841, 847 n.6 (10th Cir. 2011) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

[25]   *See Castillo v. Astrue*, 2011 WL 13627 (D. Kan. Jan. 4, 2011) ("Therefore, although the decision is not as specific as the court might desire, it is sufficiently specific to make clear the weight the ALJ gave to the treating source's opinion and the reasons for that weight . . . .  More is not required.  The court finds no error.").

**B.    The ALJ properly determined Heath's residual functional capacity because the ALJ relied on the expert testimony of a vocational expert that was elicited before a lower tribunal.**

Heath next argues that the Court should reverse the ALJ's decision because the ALJ failed to make specific findings about the physical and mental requirements of Heath's past employment.  Step four of the analysis for a claim of social security disability has three phases, and the claimant bears the burden of proof during each phase.[26]  First, the ALJ must assess the nature and extent of the claimant's physical and mental limitations to determine the claimant's residual functional capacity (RFC) for work activity.[27]  Second, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work."[28]  Finally, the third phase requires the ALJ to "reach a conclusion concerning whether [the claimant] could satisfy the demands of her past relevant work, based on his findings in phases one and two."[29]  An ALJ is permitted to rely on information supplied by a vocational expert (VE) during step four; but the VE's opinion should be quoted as support for the ALJ's own findings rather than as a substitute for such findings.[30]

The ALJ's use of VE testimony was proper in the present case.  Because Heath's mental illness did not qualify as an impairment listed in the regulations, further evaluation of her

---

[26]    *See Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

[27]    *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

[28]    *Id.* at 1024.

[29]    *Doyal*, 331 F.3d at 760–61.

[30]    *See id.* at 761 ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this."); *Winfrey*, 92 F.3d at 1025 ("[W]hile the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform past relevant work.").

inability to work must be based on an analysis of her RFC.[31]  The ALJ found Heath had the RFC

to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[32]  The ALJ made

extensive findings at this first phase of step four, citing Heath's testimony and all of the medical

opinions contained in the record before concluding that Heath was capable of performing light

work.

As Heath correctly notes, the ALJ then apparently skipped phase two of the fourth step

and failed to make specific findings about the physical and mental requirements of Heath's past

relevant work.  Instead, it appears that the ALJ collapsed phases two and three into the following

finding:

> The vocational experts at the lower level reported that claimant was able to return
> to past work.  The claimant reported a long history of fast food work.  She also
> reported that she often worked 2 part time jobs at the same time.  In comparing
> the claimant's residual functional capacity with the physical and mental demands
> of this work, the undersigned finds that the claimant is able to perform it *as
> actually and generally performed.*  The vocational experts at the lower level also
> found the ability to do other work citing examples such as a small parts assembler
> (706.684022), cafeteria attendant (311.677-010), cashier II (211.462-010),
> electronics worker (726.687-010) and office helper (239.567-010) (exhibit 17E).[33]

Examining this paragraph, the Court believes the ALJ made sufficient findings to satisfy the

requirements of phases two and three.  First, the ALJ found that Heath's past relevant work

consisted of fast food work.  The ALJ also cited to the VE's report, which states "PRW is Light

as a Fast Food Worker 311.472-010/SVP2/Light."[34]  The numerical code in that description

---

[31]    *See* 20 C.F.R. §§ 404.1520(e) (OASDI); 416.920(e) (SSI) (both stating, "If your impairment(s) do
not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity
based on all the relevant medical and other evidence in your case record . . . .").

[32]    ALJ Decision, Doc. 9, p. 18.

[33]    *Id.* at 22.

[34]    Case Development Sheet, Doc. 9, p. 92.

refers to the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT), which federal regulations specifically list as an appropriate source of evidence for determining "the physical and mental demands of a claimant's past relevant work, either as the as the claimant actually performed it or as generally performed in the national economy."[35]   Moreover, the Social Security Administration and several courts have held that reference to the DOT is sufficient to satisfy phase two:

> [A]n ALJ may discharge his or her duty to make explicit findings regarding the actual physical and mental demands of a claimant's past work by referring to specific job descriptions in the Dictionary of Occupational Titles that are associated with the claimant's past work and, in view of the claimant's burden of proof [at step four], the descriptions in the Dictionary may be relied upon by an administrative law judge in determining that a claimant is able to return to past work even if the ALJ fails to elicit evidence of the specific duties performed by the claimant in that job.[36]

By referencing the work of a fast-food worker "as actually and generally performed" alongside the VE's report citing the definition of a fast-food worker in the DOT, the ALJ provided sufficient information for this Court to review his findings and conclude that substantial evidence in the record supports his conclusion that Heath's RFC permits her to return to her former occupation as a fast-food worker.

    Although the Court, and presumably the claimant, would have preferred more specific findings in the ALJ's decision, the Court finds that the evidence in the record supports the ALJ's

---

[35]   20 C.F.R. §§ 404.1560(b)(2) (OASDI); 416.960(b)(2) (SSI) (both stating, "We may use . . . other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

[36]   3 Soc. Sec. L. & Prac. § 43.128 (West 2012) (citing *Pfizer v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999); *Gray v. Heckler*, 760 F.2d 369, 372 (1st Cir. 1985); *Brinegar v. Barnhart*, 358 F. Supp. 2d 847, 858 (E.D. Mo. 2005); *French v. Apfel*, 62 F. Supp. 2d 659, (N.D. N.Y. 1999)); see also SSR 82-61, 1982 WL 31387 (Jan. 1, 1982) ("The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is usually performed in the national economy.").

decision and the ALJ substantially comported with all procedural requirements.  Heath was therefore afforded a fair hearing and proper reconsideration of her claim for OASDI and SSI.

**IT IS ACCORDINGLY ORDERED** this 16th day of November, 2012, that the decision of the Administrative Law Judge denying Plaintiff's claim for social security benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 19th day of November, 2012

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE